USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/16/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLARENCE DELANEY, JR.,

Plaintiff,

-against-

ADA PEREZ, et al.,

Defendants.

No. 19-cv-6084 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Clarence DeLaney, Jr. ("Plaintiff") brings this action against Ada Perez ("Perez"), Superintendent, Downstate Correctional Facility ("Downstate"); Melissa M. Pickett ("Pickett"), Inmate Grievance P.; Department of Corrections and Community Supervision ("DOCCS"); Shanikqua Harrison ("Harrison"), Supervising Offender Coordinator, Downstate; W. Stolfi ("Stolfi"), DMD, Downstate; and Dr. Quinones ("Quinones"), MD, Downstate; (together, "Defendants")[1]. Before the Court is Defendants' motion to dismiss the Complaint, (ECF No. 33), which Plaintiff failed to oppose. For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for the purposes of this motion. (Exhibit A, Dkt. No. 1)

On or about January 6, 2017, Plaintiff was sentenced by the County Court of Albany to two to four years' parole supervision pursuant to CPL § 410.19. (*Id*. at 4.) To execute the parole

---

[1] The original complaint also included claims against Defendants Pariso, Smith, Bannister, Amisano, Dinello, Heller, and Infantino. These claims, as they arose at Willard DTC, were severed from the action and transferred to the Western District of New York. (*See* ECF No. 11.)

supervision sentence as an alternative to incarceration, the Albany County Court ordered that Plaintiff be transferred to the Willard Drug Program ("Willard") to complete a ninety-day program. (*Id.*) This order appears in the "remarks" section of the Uniform Sentence & Commitment form. However, on the same form, the box that reads "execute as a sentence of parole supervision" is left unchecked. (*Id.* at 17.) Due to this inconsistency, Plaintiff's conditional release date was set as January 28, 2019, (*Id.* at 18), and on or about January 20, 2017, Plaintiff was transferred to Downstate. (*Id.*) While at Downstate, Plaintiff alleges he advised his counselor that he was sentenced to parole. The counselor stated that Plaintiff's records and computation sheet only stated Plaintiff was sentenced to two to four years. (*Id.*) Plaintiff filed a grievance which was denied. (*Id.*)

Plaintiff was then sent to Marcy Correctional Facility ("Marcy") on or about February 23, 2017 and was ultimately sent to Willard on or about March 9, 2017. (*Id.* at 5.) Plaintiff alleges defendants Perez, Pickett, and Harrison denied him due process because his incarceration was extended by not facilitating his transfer to Willard within ten days. (*Id.* at 7, 12-13.) Plaintiff alleges that while at Downstate, he requested medical accommodations of a CPAP machine for his sleep apnea as well as a tens machine for back pain related to scoliosis. (*Id.* at 5.) Plaintiff alleges Quinones was deliberately indifferent to his medical needs because although Plaintiff was advised that he would get these medical devices, he never received them before being transferred to Marcy. (*Id.* at 5, 14.) Plaintiff also alleges that Stolfi was deliberately indifferent to his medical needs by refusing to pull two teeth which presented an infection. (*Id.* at 8, 14.)

**Motion to Dismiss Standard**

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Although for the purpose of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). It is not necessary for the complaint to assert "detailed factual allegations," but must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*

"Pro se complaints are held to less stringent standards than those drafted by lawyers, even following Twombly and Iqbal." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013). The court should read pro se complaints "'to raise the strongest arguments that they suggest,'" *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally"). "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). Dismissal is justified, therefore, where "the complaint lacks an allegation regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y.*

*Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

**Discussion**

The court interprets the Complaint to allege six claims: (1) a due process violation pursuant to 42 U.S.C § 1983 against Defendants Perez, Pickett, and Harrison, (2) a deliberate indifference claim pursuant to 42 U.S.C § 1983 against Defendants Stolfi and Quinones, (3) an equal protection claim pursuant to 42 U.S.C § 1983 against Defendants Stolfi and Quinones, (4) a medical malpractice claim against Defendants Stolfi and Quinones, (5) an intentional infliction of emotional distress claim against Defendants Perez, Pickett, and Harrison and (6) a wrongful confinement claim against Defendants Perez, Pickett, and Harrison.

## I.     Section 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim

has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. Westchester County*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution") (citation omitted).

A. *Personal Involvement*

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because [he or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (affirming a district court's dismissal of claims against a prison warden where plaintiff did not allege the warden's personal involvement in, or awareness of, the health, safety, and communications issues raised by plaintiff); *Walker v. Schriro*, No. 11-CV-9299 (JPO), 2013 WL 1234930, at *15 (S.D.N.Y. Mar. 26, 2013) ("A defendant's status as warden or commissioner of a prison, standing alone, is [ ] insufficient to support a finding of supervisory liability."). Rather, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (emphasis added) (internal quotation marks omitted). In other words, there must be specific factual allegations as to how each defendant is personally involved in the alleged illegal activities.

Defendants argue that Plaintiff's Section 1983 claims against Perez, Pickett, and Harrison should be dismissed due to a lack of personal involvement. (ECF No. 34 at 7.) Previously, courts within the Second Circuit had followed the standards set out in *Colon v. Coughlin*, which

included five categories of evidence which, if factually presented, may have established a supervisory defendant's personal involvement. 58 F.3d 865, 873 (2d Cir. 1995). *But see Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has ... engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*."). The Second Circuit has since stated that, "*Iqbal* holds that a plaintiff may not rely on a special test for supervisory liability. Rather, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Further, the Second Circuit, agreeing with the Fifth, Seventh, Eighth, Ninth, and Tenth Circuits, *Id*. at 618 n.6, officially stated that, "[t]o hold a state official liable under § 1983, a plaintiff must plead . . . the elements of the underlying constitutional violation *directly against the official* without relying on a special test for supervisory liability." *Id*. at 620 (emphasis added). Accordingly, here, to hold an official liable under Section 1983, in the context of the Eight Amendment, the standards for supervisory liability set out in *Colon* may not be used. As stated above, Plaintiff must plead that "each Government-official, through the official's own individual actions, has violated the constitution". *Id*. at 616.

Plaintiff alleges that his grievances were ignored by his supervisors. Defendants argue that Plaintiff's claims against Defendants—here, Perez, Pickett, and Harrison —in their individual capacities should be dismissed because "[m]ere receipt of a letter is not sufficient to establish the personal liability of a supervisor." (ECF No. 34.) The February 10, 2017 e-mail correspondence between Defendants Pickett and Harrison establishes both defendants' awareness of the alleged violation. Further, Defendant Perez signed off on the denial of Plaintiff's grievance after it had been investigated, signaling her awareness of the alleged violation as well. While "mere receipt

of a letter or grievance, without personally investigating or acting" *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208 (S.D.N.Y. 2014) is not enough to establish a supervisor's personal involvement, a plaintiff can establish personal involvement "where a supervisory official receives and acts on a prisoner's grievance." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002); *see also Johnson v. Bendheim*, 00 CIV. 720 (JSR), 2001 WL 799569 (S.D.N.Y. July 13, 2001) (motion to dismiss denied as to prison official who received prisoners' grievances and denied them). Defendants Pickett, Harrison, and Perez all received and acted on Plaintiff's grievance. Pickett and Harrison proactively sent the grievance to the required office to be investigated while Perez signed off on the grievance denial. Defendants even note that "Pickett and Harrison made an effort to look into the matter." (ECF No. 34.) Accordingly, the Court finds Plaintiff has alleged sufficient facts to suggest that Defendants Pickett, Harrison, and Perez, "after being informed of the violation through a report or appeal, failed to remedy the wrong" *Johnson*, 234 F. Supp. 2d 352, 363; therefore, personal involvement has been established.

*B. Due Process Violation*

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To state a procedural due process claim, Plaintiff must allege "(1) that Defendants deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). Defendants argue that Plaintiff's Constitutional Due Process rights were not violated when he was improperly kept at Downstate for approximately fifty-six days past the sentencing court's judgement that he was to be transferred to a drug treatment program pursuant to CPL § 410.19. A prisoner bringing a Section 1983 claim for a due process violation faces significant obstacles

before the claim can be heard on the merits.  First, a prisoner first must identify a liberty interest protected by the Due Process Clause of which he was deprived. *See Sandin v.Conner*, 515 U.S. 472, 484 (1995)(stating that prisoners do not automatically have a liberty interest in freedom from any change in the conditions of their confinement).  States under certain circumstances can create liberty interests that are protected by the Due Process. *Id.*  "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (citing *Greenholtz*, 442 U.S. at 11-13; *Berard v. Vermont Parole Board*, 730 F.2d 71,75 (2d Cir. 1984); *Boothe v. Hammock*, 605 F.2d 661, 663 (2d Cir. 1979)). "Neither the mere possibility of release, nor a statistical probability of release, gives rise to legitimate expectancy of release on parole." *Barna*, 239 F.3d at 171. *See also Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) ("[I]n order to have a protectable liberty interest, a prisoner must have more than a hope or a unilateral expectation of release. He must, instead, have a legitimate claim of entitlement to it.") (quotations and citations omitted).

The Second Circuit was recently confronted with a somewhat similar issue in *Victory*— whether an inmate granted an open parole release date has a liberty interest in parole. *Victory*, 814 F.3d 47.  Referencing its earlier decision in *Green v. McCall*, 822 F.2d 284 (2d Cir. 1987), the Second Circuit described a "continuum" of liberty interests in the realm of a prisoner's rights to release. 814 F.3d at 60. At the high end of the spectrum (i.e., a recognized liberty interest) is the parolee, since "it is well established that his parole may not be revoked without due process." *Id*. (citing *Young v. Harper*, 520 U.S. 143 (1997); *Morrissey v. Brewer*, 408 U.S. 471 (1972)). Below the parolee is the parole grantee, and below the parole grantee is the inmate without a parole date (non-grantee). *Id*. The Second Circuit in *Victory* reasoned that because the Supreme

Court held that even a non-grantee may have a liberty interest, a parole grantee—who has a higher place on the liberty interest spectrum—has a liberty interest entitling him to due process in a rescission hearing. *Id*.

Extending the Second Circuit's reasoning in *Victory* to the present situation, the Court finds that Plaintiff arguably has a protectable liberty interest in his release to Willard. New York CPL § 410.91 states:

"if the court directs that the sentence be executed as a sentence of parole supervision, it ***shall*** remand the defendant for immediate delivery to a reception center operated by the state department of corrections and community supervision, in accordance with section 430.20 of this chapter and section six hundred one of the correction law, for a period not to exceed ten days. An individual who receives such a sentence ***shall*** be placed under the immediate supervision of the department of corrections and community supervision and must comply with the conditions of parole, which shall include an initial placement in a drug treatment campus for a period of ninety days at which time the defendant shall be released therefrom." (emphasis added)

The mandatory language ("shall") in CPL § 410.91 may confer upon Plaintiff a "'legitimate expectancy of release . . . grounded in [New York's] statutory scheme.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Barna*, 239 F.3d at 170); *see also Board of Pardons v. Allen*, 482 U.S. 369, 377-81 (1987) (holding that Montana statute using the language "shall" created a protected liberty interest).

Though Plaintiff's place on the liberty interest continuum may not be as high as the plaintiff in *Victory*, it likely is above the non-grantee with a potential liberty interest and does not represent "simply a unilateral hope." *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458,

465 (1981). Accordingly, Plaintiff has sufficiently identified an arguable liberty interest necessary to claim a due process violation.

Nonetheless, even if there is a liberty interest, the Plaintiff will fail if the procedural remedies available to him were "constitutionally sufficient." *(Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Peterson v. Tomaselli*, 469 F. Supp. 2d at 165 (citing *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted)). With respect to random, unauthorized acts, a prisoner's due process is not violated "so long as the government provides a meaningful remedy subsequent to deprivation." *Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001). If the claim is based on established state procedures, then "the availability of post-deprivation procedures will not, ipso facto, satisfy due process." *Hellenic*, 101 F.3d at 880. However, Plaintiff's allegations regarding the miscalculation of his release date fall within the ambit of "random, unauthorized acts." Consequently, Plaintiff "has the burden of demonstrating that no meaningful remedy was available subsequent to his liberty deprivation." 469 F. Supp. 2d at 165-66. The Second Circuit has held that the availability of a habeas proceeding constitutes a meaningful post-deprivation remedy. *See Schultz v. Egan*, 103 F. App'x 437, 441 (2d Cir. 2004) ("when random and unauthorized acts result in a prisoner being held beyond his maximum release date, the availability of a habeas proceeding would almost certainly suffice to satisfy the due process clause")(internal quotation marks omitted). In the present case, Plaintiff not only had a habeas proceeding available to him as recourse for correcting his sentence but also availed himself of that remedy. In a May 25, 2017 Decision and Judgement on Plaintiff's petition for a

writ of habeas corpus, the Seneca County Supreme Court ordered Plaintiff's release from Willard within ten days. (ECF No. 1.) Accordingly, the Court finds that the availability of a habeas proceeding and Plaintiff's use of that remedy suffices to satisfy the due process clause. Nevertheless, even if Plaintiff *did* have a protected liberty interest and was *not* afforded constitutionally sufficient process, Defendants are entitled to qualified immunity.

### C. Qualified Immunity

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341(1986). A qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998). "Qualified immunity provides government officials immunity from suit rather than a mere defense to liability." *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (internal citations and quotation marks omitted). When considering a claim of qualified immunity, courts ask first whether there was a violation of a clearly established constitutional right. *Id.* at 706. "A right is clearly established if the law (1) was 'defined with reasonable clarity,' (2) has been affirmed by 'the Supreme Court or the Second Circuit[,]' and (3) where the conduct at issue would have been understood by a reasonable defendant to be unlawful under the existing law." *Id.* (quoting *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)); see also *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.");

*accord Hunter v. Bryant*, 502 U.S. 224, 227(1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.").

The individual Defendants' actions are protected by qualified immunity because Plaintiff's due process right was not defined with reasonable clarity. The Second Circuit has yet to address a case which contemplates whether a due process violation occurred when an individual is subject to continued confinement in DOCCS custody, beyond a state mandated deadline, because of a mistake on a classification form. Courts have reached diverging decisions regarding the standards that should be met for an inmate to have a liberty interest in parole. *See Sandin v. Conner*, 515 U.S. 472 (1995)(holding that a liberty interest exists where a confinement imposes atypical and significant hardship on the inmate and that mandatory regulations are not exclusively dispositive of the issue); *but see Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016) (holding that an inmate who has been granted an open parole release date has a legitimate expectancy of release that is grounded in New York's regulatory scheme has a liberty interest protected by the due process clause); *but see Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979) (holding that in order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme). Given the muddled and contradictory nature of caselaw regarding liberty interests for parolees, and that "existing precedent must have placed the constitutional question beyond debate" *Reichle v. Howards*, 566 U.S. 658, 664 (2012)(internal quotation and citation omitted), the Court concludes that the particular nature of Defendant's due process rights was not defined with reasonable clarity. Thus, Defendants could not have violated a "clearly established" right.

Further, qualified immunity applies if the official's mistake as to what the law requires is reasonable. *Malley*, 475 U.S. at 341. It does not apply if, on an objective basis, it is obvious that no reasonably competent official would have taken the actions of the alleged violation. *Id*. Defendants Perez, Pickett, and Harrison were acting based on what they assumed was a correct Reception/Classification form that reflected Plaintiff's conditional release date as January 28, 2019. The Court concludes that a reasonably competent official could read the Reception/Classification form to mean that Plaintiff's sentence was not to be executed as a parole supervision sentence, even though the form was mistaken. (ECF No. 1.) Therefore, and particularly because the scope of those covered by qualified immunity is quite broad, *Malley*, 475 U.S. at 34, Defendants' motion to dismiss Plaintiff's due process claims is granted.

### D. Deliberate Indifference to Serious Medical Needs

The Constitution requires that prison officials "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A post-conviction inmate's claims arise under "the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Moreover, to set forth a Section 1983 claim for conditions of confinement, a plaintiff must allege that an individual "acted with deliberate indifference to the challenged conditions." *Sanders v. City of New York*, 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018).

"Not every lapse in prison medical care will rise to the level of a constitutional violation" and "simple negligence is not sufficient to bring a § 1983 claim." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). Moreover, "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." *Id*. and "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble,*

429 U.S. 97, 106 (1976). To rise to the level of a constitutional violation, the conduct complained of must "shock the conscience" or amount to a "barbarous act." *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).

To assert a deliberate indifference claim, a plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 30. "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id.* at 29 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). To determine whether a medical need rises to the level of a constitutional claim for deprivation of medical care, the court considers factors such as "whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles v. Orange Cnty.*, 925 F.3d 73 (2d Cir. 2019) "In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Id.* Here, Plaintiff alleges no actual medical consequences arising from the denial of care beyond "pain and suffering."

The Court finds that Plaintiffs medical needs for sleep apnea and his dental complaints do not meet the burden of seriousness required for a constitutional violation. Plaintiff makes no allegations of tooth loss or other substantial consequences characteristic of a successful deliberate indifference to medical needs claim. *See Booker v. Griffin*, 16-CV-00072 (NSR), 2019 WL 549065 (S.D.N.Y. Feb. 11, 2019) (holding that plaintiff's allegations of months of

constipation due to lack of allergy medication and tooth loss due to a lack of dental care stated a sufficiently serious medical need); *see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (holding that a medical need is considered serious where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap). Because "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment," Defendants' motion to dismiss Plaintiff's claim of deliberate indifference to serious medical needs is granted. *Estelle*, 429 U.S. 97 at 106. To the extent that Plaintiff can identify specific consequences of treatment denial for sufficiently serious medical needs, Plaintiff is granted leave to replead his claim.

### E. Equal Protection or "Discrimination" Claim

Plaintiff brings a claim of discrimination and alleges that he was intentionally denied a CPAP machine, was denied permission to use the handicap bathroom, and that his grievances were ignored. The Court interprets the complaint of "discrimination" to allege a violation of the equal protection clause of the Constitution. (Exhibit A, Dkt. No. 1, p.10) To sustain an equal protection claim, a plaintiff must allege that (1) "the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Tyk v. Surat*, 675 F. App'x 40, 42 (2d Cir. 2017) (summ. order) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)).

Under the first prong, a Plaintiff must identify a "similarly situated" comparator and plausibly allege that he or she was "treated differently" to that comparator. *See Hampshire Recreation, LLC v. The Vill. of Mamaroneck*, 664 F. App'x 98, 100 (2d Cir. 2016) (summ. order)

Further, "a plaintiff must identify comparators whom a prudent person would think were roughly equivalent." *JF v. Carmel Cent. Sch. Dist.*, 168 F. Supp. 3d 609. Markedly, Plaintiff does not provide a single similar or similarly situated comparator that was subject to different treatment. Plaintiff's conclusory allegations and his personal opinion that such treatment was motivated by discriminatory intent are not enough to plead a Section 1983 claim for a violation of the equal protection clause. *See EklecCo NewCo LLC v. Town of Clarkstown,* 16-CV-6492 (NSR), 2019 WL 2210798 (S.D.N.Y. May 21, 2019*).* Accordingly, to the extent Plaintiff asserts an equal protection claim, said claim is dismissed without prejudice.

**II.     Plaintiff's Claims under State Law**

   *a.  Medical Malpractice*

Plaintiff alleges medical malpractice arising from Defendant Quinone's failure to provide him with a CPAP machine for his sleep apnea and a tens unit for his back pain. Plaintiff also alleges medical malpractice arising from Dr. Stolfi's failure to remove a tooth that presented an infection in an X-Ray. This Court has noted that "to assert a valid medical malpractice claim against a physician, a plaintiff must establish that the physician deviated or departed from accepted community standards of practice and that such departure was a proximate cause of the plaintiff's injuries." *See Gross v. Friedman,* 73 N.Y.2d 721, 722-723(1988); *see also Gale v. Smith & Nephew, Inc.*, 989 F. Supp. 2d 243, 252 (S.D.N.Y. 2013)(quoting *Williams v. Sahay,* 783 N.Y.S.2d 664, 666 (App. Div. 2d Dep't 2004)).

Lacking from Plaintiff's complaint are factual allegations that Dr. Stolfi's proposed course of treatment for an infected tooth and treatment of sleep apnea and scoliosis was a departure from accepted medical standards of practice. Plaintiff further fails to allege the nature of the injuries purportedly suffered from the failure to remove the tooth and receive a CPAP and

TENS machine and simply alleges "pain and suffering" with no specificity. Accordingly, Plaintiff has failed to assert sufficient facts to support a plausible medical malpractice claim. Defendants' motion to dismiss Plaintiff's medical malpractice claim is granted without prejudice.

> b. *Intentional Infliction of Emotional Distress*

Construed liberally, the Court interprets Plaintiff's fourth cause of action to be a claim of intentional infliction of emotional distress against Defendant's Perez, Pickett, and Harrison for not allowing his sentence to be executed as a parole supervision sentence. To assert a claim of intentional infliction of emotional distress under New York law, plaintiff must allege: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *See Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996); *Cuellar v. Love,* 11-CV-3632 NSR, 2014 WL 1486458 (S.D.N.Y. Apr. 11, 2014) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)). Because the claim of intentional infliction of emotional distress is so disfavored, *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006), a plaintiff must typically show that the defendant's conduct has been "so extreme in degree" as to exceed "all possible bounds of decency." *See Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983). Any allegations of suffering from severe emotional distress must be supported with objective evidence and not speculative claims. *See Allam v. Meyers*, 906 F. Supp. 2d 274, 282 (S.D.N.Y. 2012) (citing *Roche v. Claverack Coop. Ins. Co.*, 59 A.D.3d 914, 919 (3rd Dept. 2009)); *Cusimano v. United Health Servs. Hosps., Inc.*, 91 A.D.3d 1149, 1152 (3rd Dept. 2012); *Walentas v. Johnes*, 257 A.D.2d 352, 353 (1st Dept. 1999); *Christenson v. Gutman*, 249 A.D.2d 805, 808-09 (3rd Dept. 1998)).

Plaintiff alleges no evidence to demonstrate that the Defendants performed an intentional act with the purpose of causing or disregarding a substantial probability of causing severe emotional distress. The evidence alleged demonstrates that Defendants Perez, Pickett, and Harrison investigated Plaintiff's grievance, weighed the information obtained, and determined, though mistakenly, that plaintiff was to remain in the Downstate facility. Plaintiff's allegations cannot support a finding that Defendants knew of the mistake and subjected him to imprisonment anyway. Accordingly, and particularly because claims for intentional infliction of emotional distress are highly disfavored, the Court finds that Plaintiff's complaint is not sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S at 555. The Court grants defendant's motion to dismiss the claim of intentional infliction of emotional distress without prejudice.

### c. *Wrongful Confinement*

Plaintiff brings a wrongful confinement claim against Defendants Perez, Pickett, and Harrison stemming from the same incidents that gave rise to Plaintiff's due process claim. Similar to Plaintiff's due process claim, Defendants Perez, Pickett, and Harrison are protected by qualified immunity. *See Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012). As stated above, the Court concludes that a reasonably competent official could read the Reception/Classification form to mean that Plaintiff's sentence was not to be executed as a parole supervision sentence, even though the form was mistaken. (ECF No. 1.) The scope of those covered by qualified immunity is broad, *Malley*, 475 U.S. at 34 and qualified immunity is not merely a defense to liability but an immunity from suit. *See Looney*, 702 F.3d 701, 705. Therefore, Defendants' motion to dismiss Plaintiff's wrongful confinement claim is granted with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's due process and wrongful confinement claims against Defendants Perez, Pickett, and Harrison is GRANTED with prejudice. Defendants' motion to dismiss claims against Defendant's Stolfi and Quinones is GRANTED without prejudice. Plaintiff is granted leave to amend his Complaint in accordance with this Opinion. Plaintiff shall file an amended Complaint on or before August 31, 2021. An amended prisoner complaint form is attached to this opinion. If an amended pleading is not filed by August 31, 2021, or Plaintiff fails to move for an extension to that deadline, the remaining claims in the Complaint may be dismissed with prejudice and the action terminated without further notice. If Plaintiff elects to timely file an Amended Complaint, then Defendants shall have until 30 days from the date of Plaintiff's filing to answer the Amended Complaint or seek leave to file a non-frivolous motion to dismiss. The Clerk of Court is directed to terminate the motion at ECF No. 33 and to mail a copy of this opinion to *pro se* Plaintiff at the address listed on ECF and show service on the Docket.

Dated:   July 16, 2021                        SO ORDERED:
          White Plains, New York

                                             _____
                                              NELSON S. ROMÁN
                                    United States District Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

## COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                Middle Initial              Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                          State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

# IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                    Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

Defendant 2:

First Name                    Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

Defendant 3:

First Name                    Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

Defendant 4:

First Name                    Last Name                        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.  RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____          _____
Dated                                     Plaintiff's Signature

_____
First Name                Middle Initial        Last Name

_____
Prison Address

_____
County, City                          State                  Zip Code

Date on which I am delivering this complaint to prison authorities for mailing:  _____